| | | |
|---|---|---|
| STATE OF MARYLAND | * | IN THE |
| | * | CIRCUIT COURT |
| v. | * | FOR |
| | * | BALTIMORE CITY |
| GARY CLAYTON | * | Case No. 115124016 |

*********

## MOTION FOR FRANKS HEARING

Now comes the Defendant, Gary Clayton, by and through Staci L. Pipkin, his attorney, and hereby respectfully requests, pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), an evidentiary hearing to determine whether the search warrant executed in the above-captioned matter is supported by probable cause, once the false statements in said affidavit are set to one side. The specific grounds in support of this motion are set forth below.

## FACTUAL BACKGROUND

On April 8, 2015, Detective Jemell Rayam of the Baltimore Police Department (Sequence # H740), applied for and was granted a search warrant for the Defendant's home at 663 Gutman Avenue, Apt. 2. As the basis for this search warrant, Detective Rayam provided several facts in support of his application which are summarized as follows: 1) that a confidential informant (CI-1), advised him that Mr. Clayton was a narcotics distributor who was in possession of a gun; 2) that during the second week of April he observed Mr. Clayton hand an unknown item to an unknown person in the 1000 block of Hoffman Street; 3) that on April 8, 2015, CI-1 told the detectives that Mr. Clayton would be carrying a

1



weapon while he was driving around; 4) that based on that information, Detectives stopped Mr. Clayton for a traffic offense and observed "numerous green tops that go to vials that illegal narcotics are packed into;" and finally that 5) based on this information, Det. Rayam then went to the Defendant's home and knocked on the door to "further investigate and speak with [Mr.] Kimberly Demory." He alleges in his search warrant that after Ms. Demory answered the door, "Mr. Gary Clayton then started screaming to don't let the police in and shut the door and became irrational. Ms. Demory then stated that she was going to call 911 at which time Det. Rayam was able to observe white powdery substance suspected cocaine along with green top vials on the living room table from outside the apartment door. Ms. Demory attempted to close the door and Det. Rayam then observed Ms. Demory take the glass with the suspected cocaine and green top vials and shove it under the couch. Det. Rayam and Det. Clewell then entered 663 Gutman Ave, Apt.2, Baltimore, MD 21218 and detained Ms. Demory." (Defendant's Exhibit 1, Page 8).

Following a search of the apartment, the Defendant was arrested and charged with possession with intent to distribute heroin and cocaine, possession of a firearm by a prohibited person, and other related offenses. Specifically alleged to have been recovered in the living room was "one black plastic bag containing (1) plastic bag containing (25) green top vials containing white substance suspected cocaine (1) plastic bag containing (25) green top vials containing white substance suspected cocaine." (Defendant's Exhibit 2).

2

During her investigation of the charges against the Defendant, undersigned counsel had an opportunity to interview Ms. Kimberly Demory. In the course of said interview, Ms. Demory advised that the events surrounding the entry to her home unfolded in a very different manner than the officers alleged in the warrant. At no time did I show the warrant to Ms. Demory nor tell her what the officers alleged. She indicated that she opened the door believing that it was the Defendant, Mr. Gary Clayton, and that when she did, she was met by an officer who seems to fit the description of Detective Rayam. She indicated that she heard Mr. Clayton yelling that the police did not have a search warrant and not to let them in. She indicated that because they were in plain clothes, she picked up the phone to call 911 (in order to confirm their identity as police officers), and that at that time, Detective Rayam produced a handgun and placed it to her head, told her to stop calling 911, and then forced his way into the apartment. Ms. Demory suffers from severe asthma. She indicated to counsel that these actions caused her to begin having an asthma attack, and that at some point, the officers called for a medic to respond to her home. While this was happening, one officer began searching her home while she and Mr. Clayton were handcuffed and detained and made to sit on the couch in the living room.

When asked about the allegation of controlled dangerous substances being in plain view on the living room table, she denied that there was anything in plain view. Interestingly, there is no mention of glass, loose white powdery substances, or green top vials mentioned in the statement of probable cause, the offense reports, or the evidence control submission sheets. The only reference to

controlled dangerous substances recovered in the living room indicates that any narcotics in the living room were concealed within a black plastic bag. (*See attached* Defendant's Exhibit 2, the Statement of Probable Cause). Furthermore, according to the Evidence Control Submission reports, there is no reference to the supposed green tops which were observed during the initial traffic stop.

## FRANKS V. DELAWARE

Generally, "[i]n assessing probable cause for the issuance of a warrant, a reviewing court is ordinarily confined to the averments contained in the four corners of an affidavit." Holland v. State, 154 Md.App. 351, 386 (2003). However, in Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court carved out an exception to the "four corners" review of a warrant. Specifically, in Franks, the Court wrote:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the fact of the affidavit.

Id. at 155-56.

Subsequently, in McDonald v. State, 347 Md. 452, 471-72 n. 11 (1997), our Court of Appeals mapped out the process attendant to a Franks hearing, explaining:

> Franks v. Delaware set out a procedure, requiring a detailed proffer from the defense before the defendant is even entitled to a hearing to go behind the four corner of the warrant. Under Franks, when a defendant makes a substantial preliminary showing that the affiant intentionally or recklessly included false statements in the supporting affidavit for a search warrant, and that the affidavit without the false statement is insufficient to support a finding of probable cause, the defendant is then entitled to a hearing on the matter. The burden is on the defendant to establish knowing or reckless falsity by a preponderance of the evidence before the evidence will be suppressed.

If the threshold burden of a substantial preliminary showing of an intentional or recklessly included false statement in the warrant affidavit is established by a preponderance of the evidence, the court then conducts "an evidentiary taint hearing." Holland, 154 Md. App. at 389. At this stage, the court "must determine whether probable cause would exist based on the affidavit if the information improperly included were excised or, conversely, whether probable cause remains if the omitted information were deemed included. If probable cause would no longer exist, then the search warrant will be invalidated and the evidence obtained pursuant to the warrant will be suppressed." Id. at 389.

As applied in this case, the testimony of Ms. Demory, which she is prepared to give under oath, to the effect that the detectives were never at her apartment door in order to see anything in plain view, that there was in fact no contraband in plain view, coupled with the fact that the State's own disclosure regarding Detective Rayam's veracity, certainly establishes by a preponderance of

5

the evidence the requisite substantial preliminary showing that the affidavit here intentionally or recklessly included false statements, and therefore permits the court, in its review of the warrant here at issue, to go outside the four corners of the search warrant affidavit. Upon doing so, the only conclusion to arrive at is the remainder of the affidavit contents, i.e., the information supplied by "CI-1" and observations of one possible transaction with an unknown person of an unknown item, would not, standing alone, suffice to establish probable cause, thus requiring that the warrant be invalidated and the evidence obtained pursuant to the warrant be suppressed.

Respectfully submitted,

_____
Staci L. Pipkin, Esq.
JACK B. RUBIN, P.A.
1300 Court Square Building
200 E. Lexington Street
Baltimore, Maryland 21202
(410) 727-8710
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November 2015, a copy of the foregoing Motion for Franks Hearing was delivered via e-mail to Kent Grasso, Esquire, Assistant State's Attorney for Baltimore City.

_____
Staci L. Pipkin